950 F.2d 383
 George SWAMP, John Hendrick and Labor-Farm Party/Partido
Laborista-Agrario, Plaintiffs-Appellants,
v.
Kevin KENNEDY, individually and as Executive Director,
Wisconsin State Board of Elections, and Peter R. Dohr,
Thomas P. Godar, Mark E. Sostarich, Robert L. Turner, John
Niebler, David W. Opitz, Brent Smith and Kit Sorenson,
individually, and as Members, Wisconsin State Board of
Elections, Defendants-Appellees.
 Nos. 90-2781, 90-2884.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 25, 1991.
Decided Dec. 3, 1991.
Rehearing and Rehearing En Banc
Denied Feb. 11, 1992.
 
 Donald J. Hanaway, Atty. Gen., Alan Lee (argued), Wis. Dept. of Justice, Madison, Wis., for defendants-appellees.
 Before MANION and KANNE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 KANNE, Circuit Judge.
 
 
 1
 George Swamp, John Hendrick and the political party of which they are members, the Labor-Farm Party/Partido Laborista-Agrario (collectively the "Labor-Farm Party"), challenge the constitutionality of Wisconsin's statutory ban on "multiple party nominations," which prohibits a candidate from being nominated by more than one party for the same office in the same election.[1] Members of the Labor-Farm Party sought to place the name of Douglas La Follette on that Party's primary ballot for Secretary of State; however, nomination papers had previously been filed to place his name on the primary ballot of the Democratic Party. The Labor-Farm Party argues that the ban unconstitutionally infringes on its rights of free speech and association guaranteed by the First and Fourteenth Amendments of the United States Constitution.[2] The district court denied the Party's motion for injunctive relief and motion for summary judgment, and dismissed the action. We affirm.
 
 
 2
 The Supreme Court recently reiterated the framework for assessing the constitutionality of a state election law in Eu v. San Francisco County Democratic Central Committee:
 
 
 3
 A State's broad power to regulate the time, place, and manner of elections "does not extinguish the State's responsibility to observe the limits established by the First Amendment rights of the State's citizens." Tashjian v. Republican Party of Connecticut, 479 U.S. , 217, 107 S.Ct. , 550 [93 L.Ed.2d 514 (1986) ]. To assess the constitutionality of a state election law, we first examine whether it burdens rights protected by the First and Fourteenth Amendments. If the challenged law burdens the rights of political parties and their members, it can survive constitutional scrutiny only if the State shows that it advances a compelling state interest and is narrowly tailored to serve that interest.
 
 
 4
 489 U.S. 214, 222, 109 S.Ct. 1013, 1019-20, 103 L.Ed.2d 271 (1989) (other citations omitted).
 
 
 5
 It is well settled that partisan political organizations enjoy the freedom of association protected by the First and Fourteenth Amendments. Eu, 489 U.S. at 224, 109 S.Ct. at 1020. The Labor-Farm Party contends that the multiple party nomination ban burdens its associational rights in two ways.
 
 
 6
 First, the Party argues that the ban infringes upon party autonomy by restricting its ability to select candidates for electoral office. Although the freedom of association encompasses a political party's decisions about the identity of, and the process for electing, its leaders, Id., 489 U.S. at 229, 109 S.Ct. at 1024, a party's associational rights are not absolute and are necessarily subject to qualification if elections are to be run fairly and effectively. Munro v. Socialist Workers Party, 479 U.S. 189, 193, 107 S.Ct. 533, 536, 93 L.Ed.2d 499 (1986). The ban prohibits a candidate from running in more than one party primary for the same office in the same election. Therefore, the right of party members to associate is only limited to the extent that they are prevented from placing on their primary ballot the name of a candidate who has previously been placed on the primary ballot of another party. The ban does not substantially burden the "availability of political opportunity," Lubin v. Panish, 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974), because a party may nominate any candidate that the party can convince to be its candidate. Here, La Follette filed his own nomination papers as a candidate for Secretary of State in the Democratic primary and submitted an affidavit stating that he is a "lifelong Democrat." The Labor-Farm Party has no right to associate with a candidate who has chosen to associate with another party.
 
 
 7
 Second, the Labor-Farm Party maintains that the ban is disproportionately burdensome on minority parties and limits competition. A burden that falls unequally on new or small political parties discriminates against those parties and voters whose political preferences lie outside the existing political parties. Anderson v. Celebrezze, 460 U.S. 780, 794-95, 103 S.Ct. 1564, 1572, 75 L.Ed.2d 547 (1983). Accordingly, the Labor-Farm Party asserts that, unlike major parties, minority parties cannot win state-wide elections on their own, without going into coalition with other parties. Therefore, the Party concludes that the ban has a disproportionate impact on the electoral success of third parties and burdens their efforts to compete, publicize their views, and widen their popular base of support. We disagree.
 
 
 8
 The Labor-Farm Party acknowledges that there is no competition among parties if parties choose the same candidate for an office, but asserts that by choosing a candidate already nominated by another party a minority party can gain strength overall, irrespective of any particular campaign. This argument cuts against the Party's position. Allowing minority parties to leech onto larger parties for support decreases real competition; forcing parties to chose their own candidates promotes competition.[3] Cf. Hall v. Simcox, 766 F.2d 1171, 1176 (7th Cir.) (finding that a restriction on ballot access ratifies competition by keeping off the ballot those parties so lacking in electoral appeal that they contribute little to political diversity), cert. denied, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 459 (1985).
 
 
 9
 The ban also does not burden a minority party's efforts to publicize its views or widen its base of support; it merely restricts a party from nominating another party's candidate. A party can support a candidate previously nominated by another party if that candidate best represents its views or the party is free to choose any other candidate to express its views.
 
 
 10
 Even if the ban burdens the associational rights of political parties, it is justified by compelling state interests. The district court recognized the legitimate interest of the State in assuring that the winner of an election is the choice of a majority or at least a plurality of the voters. Bullock v. Carter, 405 U.S. 134, 145, 92 S.Ct. 849, 857, 31 L.Ed.2d 92 (1972). If a candidate appears on the primary ballots of more than one party but is defeated in all of the primaries in which he runs, his name will not be on the general ballot even though he may have received the majority of votes in the aggregate.
 
 
 11
 Avoiding voter confusion is also a compelling state interest. Bullock, 405 U.S. at 145, 92 S.Ct. at 857. By limiting the names on the ballot to those who have won the primaries, voters will be presented "with understandable choices and the winner in the general election with sufficient support to govern effectively." Storer v. Brown, 415 U.S. 724, 735, 94 S.Ct. 1274, 1281, 39 L.Ed.2d 714 (1974). Without a ban on multiple party nominations, an unlimited number of minority parties could nominate the candidate of a major party for the same office, causing serious confusion for voters. Because the candidate would be presented by the different parties as representing the particular views and preferences of each party, it would be difficult for voters to distinguish between the parties.
 
 
 12
 Moreover, the State has a compelling interest in preserving the integrity of its election process. Eu, 489 U.S. at 231, 109 S.Ct. at 1024; Rosario v. Rockefeller, 410 U.S. 752, 761, 93 S.Ct. 1245, 1251, 36 L.Ed.2d 1 (1973); Dunn v. Blumstein, 405 U.S. 330, 345, 92 S.Ct. 995, 1004, 31 L.Ed.2d 274 (1972); Bullock, 405 U.S. at 145, 92 S.Ct. at 857. Toward that end, a State may enact laws that interfere with a party's internal affairs when necessary to ensure that elections are fair and honest. Eu, 489 U.S. at 231, 109 S.Ct. at 1024 (citing Storer, 415 U.S. at 730, 94 S.Ct. at 1279).
 
 
 13
 Wisconsin has a legitimate interest in seeking to curtail "raiding," whereby voters who are sympathetic with one party vote on the ballot of another party so as to influence or determine the results of that other party's primary. Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 219, 107 S.Ct. 544, 551, 93 L.Ed.2d 514 (1986); Rosario, 410 U.S. at 760, 93 S.Ct. at 1251; Bullock, 405 U.S. at 145, 92 S.Ct. at 857 ("[s]tate has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies"). For example, if multiple party nominations were permitted, the National Socialist Party could nominate a candidate who has been nominated by a major party and is adverse to the National Socialist Party's interests in order to encourage voters opposing the National Socialist Party to defeat the candidate.
 
 
 14
 The ban also limits involuntary fusion of political parties. Maintaining a stable political system is a compelling state interest. Eu, 489 U.S. at 226, 109 S.Ct. at 1022. States may regulate elections to ensure that "some sort of order ... accompan[ies] the democratic process." Storer, 415 U.S. at 730, 94 S.Ct. at 1279.
 
 
 15
 Wisconsin's ban on multiple party nominations does not burden the associational rights of political parties and is justified by compelling state interests. The district court properly denied the Labor-Farm Party's motion for injunctive relief and motion for summary judgment, and dismissed the action.
 
 
 16
 The judgment of the district court is AFFIRMED.
 
 
 17
 FAIRCHILD, Senior Circuit Judge, concurring.
 
 
 18
 "Freedom of association means ... that a political party has a right ... to select a 'standard bearer who best represents the party's ideologies and preferences.' " Eu v. San Francisco County Democratic Central Comm., 489 U.S. 214, 224, 109 S.Ct. 1013, 1021, 103 L.Ed.2d 271 (1989) (citations omitted). If a law "burdens the rights of political parties and their members, it can survive constitutional scrutiny only if the State shows that it advances a compelling state interest ... and is narrowly tailored to serve that interest." Id. at 222, 109 S.Ct. at 1019-20 (citations omitted).
 
 
 19
 In applying the Eu formula, the first question is whether the prohibition against cross-filing burdens plaintiff's rights. The majority opinion intimates that the burden is small because the only persons plaintiffs are prevented from placing on their primary ballot are persons previously placed on the primary ballot of another party. Apparently deeming the burden minimal, the majority opinion ultimately concludes there is no burden on associational rights.
 
 
 20
 Perhaps there is room for a balancing process, and for dismissing the burden here as insignificant. The Supreme Court has described the applicable analytical process as follows:
 
 
 21
 [A Court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.
 
 
 22
 Anderson v. Celebrezze, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983) (citations omitted).
 
 
 23
 The second step under Eu is to identify the state interest served and decide whether it is "compelling." Identifying a state interest important enough to be "compelling" presents difficulties. Two Justices of the Supreme Court have expressed discomfort with the "compelling state interest" test. Eu, 489 U.S. at 233-34, 109 S.Ct. at 1025-26 (Stevens, J., concurring) (quoting Illinois Bd. of Elections v. Socialists Workers' Party, 440 U.S. 173, 188-89, 99 S.Ct. 983, 992, 59 L.Ed.2d 230 (1979) (Blackmun, J., concurring)). Not all states consider that a prohibition against cross-filing serves a compelling interest. Several states, including New York, Massachusetts, and Pennsylvania,[1] allow multiple party nominations.
 
 
 24
 Assuming the prohibition against cross-filing does burden associational rights, the majority opinion then concludes that the burden is justified by compelling state interests. Three "compelling" state interests are identified: (1) avoiding voter confusion, (2) preserving the integrity of the election process, and (3) maintaining a stable political system. With all respect, I am unable to agree that state interests (1) and (2) are advanced by the prohibition against cross-filing. I will reach state interest (3) at a later stage.
 
 
 25
 The majority opinion also identifies two state interests characterized as "legitimate": (1) assuring that the winner of an election is the choice of a majority, or at least a plurality of the voters, and (2) seeking to curtail voters sympathetic to one party voting in the primary of another party. Again, I am unable to agree that prohibition against cross-filing does anything to advance either of these interests, even if labeled "compelling." The problem suggested by the majority opinion, that one party could damage the candidate of another party by nominating him, could be prevented by a much more narrow provision requiring an acceptance by the candidate before his name could be placed on the primary ballot.
 
 
 26
 The majority's third "compelling" interest is maintaining a stable political system. I would describe the interest served by prohibiting cross-filing more narrowly. It is the interest in maintaining the distinct identity of parties. People may rationally believe that in a party system, each party should have a distinct ideology, platform, and the like, and it seems arguable that the distinct identity of parties will be blurred if persons are permitted to present themselves as the candidate of more than one party. This may be true as a general proposition even though there may be individual instances where two parties may have the same position on one or more issues. In the present case, where the candidate seeks the non-policy-making office of secretary of state, his being the candidate of two parties could do little real damage to the distinct identity of principles of the parties.
 
 
 27
 It happens that Wisconsin (other than prohibiting cross-filing) seems not to place a high value on maintaining the distinct identity of parties. It does not require voters to register their political affiliation. When any voter enters the booth at a partisan primary election, Wisconsin gives the voter the complete freedom, in privacy, to choose the party in whose primary he will vote that day. A person is not prohibited from being a candidate in the primary of one party even if he has voted in, or been the candidate of, another party at an earlier election. Nevertheless, if one believes it important that parties should be so distinct in their principles and ideologies that one candidate is unlikely to be able, conscientiously and effectively, to represent more than one party in the same election, the prohibition against cross-filing does advance that interest.
 
 
 28
 In any event, maintaining the distinct identity of parties can be viewed as one facet of maintaining a stable political system. The Supreme Court has recognized a State's interest in the stability of its political system as "compelling." Storer v. Brown, 415 U.S. 724, 736, 94 S.Ct. 1274, 1282, 39 L.Ed.2d 714 (1974). The California statute upheld in Storer forbade "ballot position to an independent candidate for elective public office ... if he had a registered affiliation with a qualified political party at any time within one year prior to the immediately preceding primary election." Id. at 726, 94 S.Ct. at 1277. The Court relied on Rosario v. Rockefeller, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973) upholding a provision "that to vote in a party primary the voter must have registered as a party member 30 days prior to the previous general election, a date eight months prior to the presidential primary and 11 months prior to the nonpresidential primary." Storer, 415 U.S. at 731, 94 S.Ct. at 1279. The Court also set forth California's decision to forbid cross-filing, reached in 1959, after having permitted it for many years. Id. at 734, 94 S.Ct. at 1281. It also cited Lippitt v. Cipollone, 404 U.S. 1032, 92 S.Ct. 729, 30 L.Ed.2d 725 (1972). Id. 415 U.S. at 736, 94 S.Ct. at 1282. There the Court affirmed, without opinion, a district court decision upholding a statute which prohibited being a candidate for nomination at a party primary if the person voted at the primary of a different party within the preceding four years. The measures mentioned in Storer, Rosario, and Lippitt all serve the purpose of maintaining distinct party identity. Storer found that to be a compelling state interest, though under the rubric of stability of the political system.
 
 
 29
 I am persuaded that Storer requires affirmance in this case, and therefore concur.
 
 ORDER
 Feb. 11, 1992
 
 30
 Before: BAUER, Chief Judge, and CUMMINGS, CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, and KANNE, Circuit Judges and FAIRCHILD, Senior Circuit Judge.*
 
 
 31
 On consideration of the petition for rehearing and suggestion for rehearing en banc filed in the above-entitled cause on December 26, 1991, a vote of the active members of the Court was requested, and a majority of the active members of the Court have voted to deny a rehearing en banc. Judges Posner, Easterbrook and Ripple voted to grant rehearing en banc. All of the judges on the original panel have voted to deny the petition for rehearing. Accordingly,
 
 
 32
 IT IS THEREFORE ORDERED that the request for rehearing en banc is hereby, DENIED; IT IS FURTHER ORDERED that the petition for rehearing is hereby DENIED.
 
 
 33
 RIPPLE, Circuit Judge, with whom POSNER and EASTERBROOK, Circuit Judges, join, dissenting from the denial of rehearing en banc. The panel opinion, while it articulates established standards, actually deviates in important respects from the methodology and analysis employed by the Supreme Court in Eu v. San Francisco County Democratic Cent. Comm., 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989), and Norman v. Reed, --- U.S. ----, 112 S.Ct. 698, --- L.Ed.2d ---- (1992), (The panel did not have the benefit of the latter).
 
 
 34
 First, while acknowledging that political parties enjoy associational rights, Swamp v. Kennedy, 950 F.2d 383, 385 (7th Cir.1991), the panel concludes--categorically--that the Wisconsin ban on multiparty nominations does not burden those rights, id. at 387. Certainly, a more indepth examination of the associational rights at issue is required by established case law. See Anderson v. Celebrezze, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983) (court must examine character and magnitude of the rights at stake). The Supreme Court has recognized that the right of a party to nominate a candidate of its choice is a vital aspect of the party's role in our political structure. See Eu, 489 U.S. at 224, 109 S.Ct. at 1020-21. The ability to choose the same person as another party is an important aspect of that right. It allows a party to form significant political alliances. When a minor party nominates a candidate also nominated by a major party, it does not necessarily "leech onto," Swamp, at 386, the larger party for support. Rather, it may--and often does--offer the voters a very real and important choice and sends an important message to the candidate. If a person standing as the candidate of a major party prevails only because of the votes cast for him or her as the candidate of a minor party, an important message has been sent by the voters to both the candidate and to the major party. If a majority of the members of both major parties believe the same person is the best candidate, that alliance is of major significance in our political life. Such information is of immense value to the electorate, and it would indeed be salutary for the candidate to know which platform the majority of the voters favor. In short, permitting people to vote for a candidate on one party line rather than another increases the opportunity of both voter and party to be heard and for workable political alliances to be formed.
 
 
 35
 Second, a state may assert important countervailing state interests. However, those state interests must be real ones and, under the prevailing analysis of Norman, must be sufficiently weighty to justify the restriction. Norman, --- U.S. at ----, 109 S.Ct. at 705. Any severe restriction must be narrowly drawn to advance a state interest of compelling importance. Id. While there is a state interest in avoiding "voter confusion," Swamp, at 386, there are less restrictive alternatives to achieving that goal than by decreeing that, no matter how many members of a particular party want a particular candidate, he or she may not be their candidate simply because members of another party believe that the candidate also would best deliver the principles of their platform.
 
 
 36
 States also have an interest in the integrity of the election process, but the panel does not suggest any particular evil that necessitates this broad and severe regulation. Id. at 386-87. As the concurring opinion points out, it is not at all clear that Wisconsin, which permits cross-over votes, has an important interest in preventing the sort of "raiding" that the panel foresees. Swamp, at 388 (Fairchild, J., concurring). "Involuntary fusion," Swamp, at 387, of political parties sounds ominous. However, if two parties end up with the same candidate because the voters in each party voted for that result, the resulting alliance can hardly be termed "involuntary." A significant part of the electorate has expressed its desire for a political alliance. A state's interest in political stability does not give it the right to frustrate freely made political alliances simply to protect artificially the political status quo.
 
 
 
 [1]
 Wisconsin Statute § 8.15(7) provides:
 A candidate may not run in more than one party primary at the same time. No filing official may accept nomination papers for the same person in the same election for more than one party.
 Wisconsin Statute § 8.03(1) provides further:
 The name of any candidate who is nominated to the same office by more than one party ... shall appear under the party first nominating him or her....
 
 
 [2]
 Although the relevant elections have occurred, the action is not moot because this issue is "capable of repetition, yet evading review." Rosario v. Rockefeller, 410 U.S. 752, 756 n. 5, 93 S.Ct. 1245, 1249 n. 5, 36 L.Ed.2d 1 (1973); Dunn v. Blumstein, 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 998 n. 2, 31 L.Ed.2d 274 (1972); Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969)
 
 
 [3]
 The true motivation of the Labor-Farm Party in bringing this action may be to retain its "ballot status," or ability to run candidates in state elections on a specifically designated party line. To retain this status, a party must earn a certain percentage of the vote in each election. By running a popular Democratic Party candidate, the Labor-Farm Party has an opportunity to garner this percentage
 
 
 [1]
 See, e.g., Conn.Gen.Stat. § 9-453t (1990); Mass.Gen.L. ch. 54 § 41 (1991); N.H.Rev.Stat.Ann. § 659:68 (1990); N.Y.Elec.Law § 6-146 (McKinney 1991); 25 Pa.Cons.Stat. § 3010(f) (1989); Utah Code Ann. § 20-5-11(2) (1991)
 
 
 *
 Senior Circuit Judge Fairchild did not participate in the consideration of the suggestion for rehearing en banc