### TWIN CITIES AREA NEW PARTY, Plaintiff,

v.

### Lou McKENNA, Director, Ramsey County Department of Property Records and Revenue; Joan Anderson Growe, Secretary of the State of Minnesota, Defendants.

#### Civ. No. 3–94–953.

United States District Court,
D. Minnesota,
Third Division.

Sept. 16, 1994.

---

Public Interest Project of Hamline Law School and Kenneth E. Tilsen, St. Paul, MN, Public Citizen Litigation Group and Cornish F. Hitchcock, Washington, DC, and Davis, Miner, Barnhill & Galland and Sarah E. Siskind, Madison, WI, appeared for and on behalf of plaintiff.

Office of the Ramsey County Atty. and Kristine Legler Kaplan and Office of the Minnesota Atty. Gen., St. Paul, MN and Peter M. Ackerberg, Minneapolis, MN, appeared for and on behalf of defendants.

## AMENDED ORDER AND MEMORANDUM

DAVIS, District Judge.

This matter came on for hearing before the Honorable Michael J. Davis on September 9, 1994 on plaintiff's motion for injunctive relief pursuant to Fed.R.Civ.P. 65. Pursuant to the agreement of the parties and upon the order of the court, Fed.R.Civ.P. 65(a)(2), the matter was consolidated and hearing was had on the merits pursuant to Fed.R.Civ.P. 56. For the reasons stated herein, the summary judgment is granted on behalf of Defendants.

## I. FACTS

In April 1994 the Twin Cities Area New Party ("New Party"), a national political organization, convened a meeting at which party members voted to nominate incumbent Minnesota State Representative Andy Dawkins as the New Party candidate for District 65A in the Minnesota House of Representatives. Although Rep. Dawkins had already filed an Affidavit of Candidacy as the candidate of the Democrat–Farmer–Labor Party (DFL) for District 65A, he expressed a willingness to accept the New Party nomination in addition to the DFL nomination.

Since the New Party does not nominate candidates in a primary, it must file a nominating petition containing the signatures of ten percent of the persons eligible to vote in the District 65A, with a minimum of 500 valid signatures. Minn.Stat. §§ 204B.03, 204B.08, Subd. 3(c) (1992).

On July 18, 1994 New Party representatives presented to the Ramsey County Department of Property Records and Revenue a nominating petition in Rep. Dawkins' behalf containing some 600 signatures.[1] When the New Party representatives tried to file their petition, Supervisor of Elections and Voter Registration Joan M. Pelzer informed them that Rep. Dawkins had already filed an Affidavit of Candidacy as the DFL candidate.

Consequently, Ms. Pelzer, citing Minn.Stat. § 204B.06, subd. 1(b),[2] refused to accept the New Party's petition.

As Director of the Ramsey County Department of Property Records and Revenue, Lou McKenna is responsible for the administration of Minnesota's election law in Ramsey County. Minn.Stat. §§ 204B.09, subd. 1 and 200.02, subd. 16. As such, Mr. McKenna is named as the defendant in this action. As Secretary of the State of Minnesota, Joan Anderson Growe is responsible for the administration of Minnesota's election laws and is named as a party in this action.

On August 10, 1994 Plaintiff moved the court for a preliminary injunction, alleging, *inter alia*, that those portions of the Minnesota election statute which require a party candidate to disaffiliate himself from other parties upon the filing of an affidavit of candidacy or a nominating petition are unconstitutional. *See*, Minn.Stat. §§ 204B.03 (requiring candidates for partisan offices to be nominated by either primary election or nominating petition), 204B.04, Subds. 1 (prohibiting a candidate's name from appearing on the ballot of more than one major political party), and 2 (prohibiting primary election candidates from being nominated by petition), and 204B.06, Subd. 1(b) (1992) (requiring candidates filing affidavits of candidacy to affirm that the candidate has filed no other affidavit of candidacy in the same primary or ensuing general election.) Defendants moved for summary judgment and plaintiffs agreed that the matter is ripe for summary judgment.

Plaintiff contends that the disaffiliation statutes infringe the associational rights guaranteed by the First and Fourteenth Amendments to the United States Constitution by prohibiting it from nominating as it's candidate the person chosen by the members.

The defendants argue that the net effect of the challenged statutes is to assure that the name of the primary election winner appears

---

1. Under Minnesota law, petitions for offices in which voters from only one county will participate must be filed with the county auditor. Minn.Stat. § 204B.09, subd. 1 (1992).

2. Section 204B.06, Subd. 1 provides that "An affidavit of candidacy shall state the name of the office sought and shall state that the candidate:
   (b) Has no other affidavit on file as a candidate for any office at the same primary or next ensuing general election ..."

only once on the general election ballot and it insures that primary election losers do not appear at all. These interests constitute the legitimate interests which justify the burden placed upon plaintiff's associational rights.

## II. DISCUSSION

### A.

■ Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219–20 (8th Cir.1992). To determine whether genuine issues of material fact exist, a court conducts a two-part inquiry. The court determines materiality from the substantive law governing the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material. *Id.* A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49, 106 S.Ct. at 2510. In the instant case, the parties agree that there are no issues as to the material facts; this matter concerns a question of law which makes its resolution particularly susceptible to summary judgment.

### B.

■ It is beyond question that the rights of the citizenry to voluntarily associate themselves for partisan political purposes is among the core values protected by the First and Fourteenth Amendments to the United States Constitution. *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 224, 109 S.Ct. 1013, 1020, 103 L.Ed.2d 271 (1989). All regulation of the election process is not, however, foreclosed by the protection afforded the electoral process by the Constitution. As the Supreme Court observed, "[T]here must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the demo-

cratic processes." *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). The state has broad power to regulate the process of elections, but that power is limited by the strictures imposed by the First Amendment. *Tashjian v. Republic Party of Connecticut*, 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986).

■ The Supreme Court has set out the framework in which the constitutionality of state election laws is to be analyzed:

[The court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the [c]ourt must not only determine the legitimacy and strength of each of those interests, it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983) (Citations omitted.); *Eu*, 489 U.S. at 222, 109 S.Ct. at 1019–20. Moreover, "[t]o the degree that a State would thwart these [First and Fourteenth] interests by limiting the access of new parties to the ballot, we have called for the demonstration of a corresponding interest sufficiently weighty to justify the limitation, and we have accordingly required any severe restriction to be narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 112 S.Ct. 698, 704, 116 L.Ed.2d 711 (1992) (Citations omitted.). However, that a state's system tends to limit the field of candidates from which the voters may choose is not dispositive of the question of the constitutionality of the statute. *Burdick v. Takushi*, —— U.S. ——, ——, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992). Rather, the inquiry is focused on the "extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Id.*

With this background in mind, the court now turns to an examination of the interests of the New Party which are purportedly burdened by the state's disaffiliation statutes and the interests advanced by the state in justification of the statutes.

### C.

■ The New Party argues here that Minnesota's disaffiliation statute infringes upon its rights to select the candidate of its choice. There can be little doubt that at the core of the associational rights protected by the First and Fourteenth Amendments is the right of a political party to select "a standard bearer who best represents the party's ideologies and preferences." *Eu,* 489 U.S. at 224, 109 S.Ct. at 1021. Nor can there be doubt that all electoral regulatory schemes impinge on "the individual's right to vote and his right to associate with others for political ends. Nevertheless, the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Anderson,* 460 U.S. at 788, 103 S.Ct. at 1569. In other words, a party's associational rights are not absolute and are subject to some degree of qualification.

Defendants argue that the resolution of this case is determined by reference to *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). There, the Supreme Court upheld a California statute which prohibited the placement on election ballots of the names of persons running as independent candidates until one year after that person had disaffiliated from a political party. *Id.* at 736, 94 S.Ct. at 1282. The Court reasoned that the disaffiliation statute assured the "integrity of various routes to the ballot" and that the statute did not discriminate against independents. Ultimately, however, the Court rested its decision on the state's interest in avoiding fractured elections; "[the disaffiliation rule] works against independent candidacies prompted by short-range political goals, pique, or personal quarrel." In short, the disaffiliation rule at issue in *Storer* was directed at "sore losers".

The issue before this court involves not a sore loser but, rather, a willing participant. Rep. Dawkins has expressed a willingness to appear on the ballot both as the New Party's candidate and as the candidate of another party. Indeed, Rep. Dawkins will appear on the ballot; he ran unopposed in his party primary. It appears to this court that that fact alone removes this case from the rationale of *Storer* as well as its reasoning.

The finding that *Storer* is not dispositive does not, however, end of the court's analysis. The challenged statutes burden plaintiff because it is denied the ability to place the name of its chosen candidate on the ballot. "[T]he rigorousness of our inquiry into the propriety of [these statutes] depends on the extent to which [they] burden[ ] First and Fourteenth Amendment rights." *Burdick v. Takushi,* —— U.S. ——, 112 S.Ct. at 2063.

The challenged statutes here prohibit a candidate from being the nominee, for a single office, of more than one party in a single election. Of critical import here is the fact that the New Party's associational rights are burdened only to the extent that they cannot nominate Rep. Dawkins, who has been nominated by another party. There is nothing in the cases of which this court is aware that requires a state to allow a single candidate to gather as many nominations as possible prior to the general election. The complaint centers on the New Party's desire to narrow political opportunity by hitching their political cart to another party's star. If plaintiff wishes to run a candidate under their party's banner, they may do so by nominating any person, other than Rep. Dawkins, that it defines as its candidate.

Minnesota law provides New Party relative ease of access to the ballot. Minnesota requires that minor parties nominate their candidates by petition. Minn.Stat. §§ 204B.03, 204B.07. The number of signatures required to be on the nominating petition in this case was ten per cent of those persons voting in the last general election or "500, whichever is less". Minn.Stat. § 204B.08, Subd. 3(c). There is no requirement, as in *Anderson,* that the new party engage in rigorous and superhuman planning in order to access the ballot. Minnesota requires a minimal showing that there is sufficient interest in a candidate to justify his or her placement on the ballot. Minnesota

also requires that the new or minor party nominate someone not affiliated with another party.

There is no allegation that the New Party was denied access to the ballot, *Norman,* 502 U.S. at ——, 112 S.Ct. at 704; rather, the New Party, solely because it chose as its candidate one chosen by another party as its candidate, was denied a place on the ballot because it had no properly qualified candidate. On that basis, the court finds that, like the total ban on write in candidacies upheld in *Takushi,* Minnesota's ban on cross-filing is a reasonable politically neutral regulation which "serves merely to channel expressive activity at the polls". *Takushi,* —— U.S. at ——, 112 S.Ct. at 2066. Moreover, the court finds that the burden imposed upon plaintiff's First Amendment rights is not so severe as to trigger a heightened scrutiny of the challenged statutes. *Norman,* 502 U.S. at ——, 112 S.Ct. at 704–05. (denial of access to ballot under statute prohibiting use of name of an established political party). Cf. *Rosen v. Brown,* 970 F.2d 169, 175 (6th Cir.1992) (striking prohibition on non-party candidates being designated on ballot as "Independents"; error to apply strict scrutiny standard as burden was not denial of access, but minor burden.)

The next step in the *Anderson* analysis is to identify and evaluate the precise interests put forward by the state as justifications for the burden imposed by the rule. The *Anderson* analysis requires that the court determine the legitimacy and strength of each interest and consider the extent to which these interests make it necessary to burden the plaintiff's rights.

### D.

Defendants set out several interests which they argue justify the questioned statute here. Defendants rest their argument primarily on *Storer* and *Swamp v. Kennedy,* 950 F.2d 383, *reh'g denied,* 950 F.2d at 388 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2992, 120 L.Ed.2d 870 (1992) and put forth several interests which they argue justify the restrictions at issue in this matter. Indeed, defendants set out those matters found sufficient in *Swamp* at length. In this case, however, defendants put forth two interests which the court finds compelling.

First, defendants assert that they have a strong interest in preventing ballot generated voter confusion. What plaintiffs seek is to place Rep. Dawkins' name on the ballot with their party designation. Rep. Dawkins, however, is already on the ballot with another party's designation. Thus, if the court accepts the arguments of plaintiffs, Rep. Dawkins will appear on the ballot twice, once as plaintiff's candidate and once as the candidate of a different party. The court finds this situation to be persuasive evidence that plaintiff's scheme will result in voter confusion; the state has a compelling interest in setting out a ballot in which all of the candidates are treated equally and which is a plain statement of the available choices. *Swamp,* 950 F.2d at 386.

Moreover, in presenting the candidates to the electorate, defendants have an equally compelling interest in knowing how the winner will be determined. *Bullock v. Carter,* 405 U.S. 134, 145, 92 S.Ct. 849, 857, 31 L.Ed.2d 92 (1972). Plaintiffs set out a scheme where the all of Rep. Dawkins's votes will be aggregated into a single total, regardless of which party designation they are owed. The flaw in this scheme is that Rep. Dawkins, then, has the opportunity not only to be chosen twice but then to have his totals aggregated so that he could lose the election under either party designation, but he could still emerge victorious after the totals were aggregated. This court finds that the prohibition of such a situation constitutes a compelling reason, in and of itself, for the cross filing ban. *Swamp, Id.* (State has compelling interest in "assuring that the winner of an election is the choice of the majority of at least a plurality of the voters.")

### E.

The final step in the *Anderson* analysis is to weigh all the factors and decide whether the challenged statutes are unconstitutional. As described above, the challenged statutes do impose a minimal burden on the New Party's First Amendment rights to associate for the purpose of advancing the political

rights of its members by limiting who can be the candidate of the New Party. In the final analysis, this court finds that the state has shown that its prohibition on multiple party candidacies for elective office is a valid and non discriminatory regulation of the electoral process. *See, Storer,* 415 U.S. at 736, 94 S.Ct. at 1282 (maintenance of stable political system is compelling state interest); *Takushi,* —— U.S. at ——, 112 S.Ct. at 2066–67 (prevention of unrestrained factionalism tied to relative ease of access to ballot constitutes a compelling state interest); *Swamp,* 950 F.2d at 386 (avoiding voter confusion is compelling state interest).

Plaintiff suggests that by preventing the New Party from nominating Rep. Dawkins, Minnesota has effectively burdened internal party operations. This is plainly not the case. Other than the restrictions placed on nominating candidates with other party affiliations, the New Party has the right to support whoever they want. Minnesota's election laws do not concern themselves with the political processes of the individual parties. Minnesota's interests are in protecting the integrity of the ballot box.

Finally, the court has found that there is a minimal burden placed on plaintiff by operation of the challenged statutes; the New Party is prohibited from choosing as its candidate the candidate of another party. The court has also found that that minimal burden is justified by defendant's interests in preserving an electoral process which is fair and certain of resolution. It should be emphasized that this court does not view this case as involving denying plaintiff New Party access to the ballot, a situation which would trigger a stricter scrutiny of the challenged statutes. *See, Eu,* 489 U.S. at 222, 109 S.Ct. at 1019; *Norman,* 502 U.S. at 279, 112 S.Ct. at 704. This case involves, rather, New Party's willingness to find another candidate who is not the candidate of another party. This court is of the opinion that the challenged statutes, even if reviewed under the stricter scrutiny called for by cases where the statutes have the effect of excluding a Party or candidate from the ballot, the statutes here pass muster.

More importantly, however, plaintiffs seek resolution of issues best resolved in the Legislature. It is apparent that issues concerning the mechanics of choosing candidates and the methods used in counting those votes, particularly where those issues are, in large part, matters of policy best left to the deliberative bodies themselves.[3] Here, there is no intrusion into the party's internal governance, no absolute prohibition on the party's participation in the electoral process, and no discrimination in the application of the challenged statutes. If plaintiffs wish to be allowed, as a matter of state law, to cross file, the state Legislature is the appropriate forum for resolution of that issue.

**Accordingly,** based on all the records, proceedings and arguments of the parties, **IT IS HEREBY ORDERED THAT:**

1. Summary Judgment is granted on behalf of Defendants.

---

3. There are several states which permit the cross filing that is at issue in this case. See, e.g., Conn.Gen.Stat. § 9–453t (1990); Mass.Gen.L., ch 54 § 41 (1991); N.H.Rev.Stat.Ann. § 659:68 (1990); N.Y.Elec. Law § 6–146 (McKinney 1994); 25 Pa.Cons.Stat. § 3010(f) (1989).