**Robbin STEWART, Plaintiff–Appellant,**

v.

**Sarah TAYLOR, Clerk of the Circuit Court of Marion County, Indiana, and Member of the Marion County Election Board, Richard Milan, Member of the Marion County Election Board, and John Muller, Member of the Marion County Election Board, in their official and individual capacities, et al., Defendants–Appellees.**

No. 96–3108.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 21, 1996.

Decided Jan. 15, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 27, 1997.

---

1991), *cert. denied*, 505 U.S. 1204, 112 S.Ct. 2992, 120 L.Ed.2d 870 (1992), and affirm the district court's decision to deny Stewart a preliminary injunction.

Michael T. Schaefer (argued), Indianapolis, IN, for Plaintiff–Appellant.

Douglas J. Webber (argued), Indianapolis, IN, for Defendants–Appellees.

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

MANION, Circuit Judge.

In early 1996 Robbin Stewart declared as a Republican candidate for a seat on the Center Township board in Marion County, Indiana. On May 7, Stewart won the Republican primary. At its party convention held on May 1 the Libertarian Party also nominated him for the same seat. Stewart accepted both nominations.

In what is termed an "anti-fusion" law, Indiana requires a candidate nominated by more than one party for one office to elect which of the nominations he accepts. If the candidate refuses to choose, and it is an election for an office within a county, another statute directs the circuit court clerk of that county to make the selection for the candidate, with preference given to the nomination made by convention. When Stewart refused to choose between the Republican and Libertarian nominations, the circuit court clerk of Marion County, following the Indiana statute, removed his name as the Republican candidate. Stewart appeared on the ballot as a Libertarian.

Stewart sued the circuit court clerk and the members of the Marion County Elections Board asserting that they infringed his First and Fourteenth Amendment rights of free speech, political association, and equal protection when they removed his name from the Republican slate on the ballot. The district court denied Stewart's request for a preliminary injunction, and this court allowed an expedited appeal. We reaffirm our decision upholding Wisconsin's "anti-fusion" law, *Swamp v. Kennedy*, 950 F.2d 383 (7th Cir.

## I.

"Fusion" as the word is used in electoral politics is a process by which two or more political parties nominate one candidate for an office in an election.[1] Each party picks its own candidate by primary, convention, or otherwise. Then, in states that allow fusion, a single candidate appears as a representative of two or more parties for the same office in the general election. That candidate can receive votes on each party's ticket; those votes are added together to determine the overall winner.

"Anti-fusion" statutes—state laws that preclude a political candidate from being listed on a ballot under more than one party for one office—are prevalent in this country. By one count 40 states have some form of anti-fusion. Note, *Fusion and the Associational Rights of Minor Political Parties*, 95 Colum. L.Rev. 683, 685 nn.13 & 14 (1995). Supporters of anti-fusion statutes stress that they lessen voter confusion by preventing a single candidate from appearing on the ballot representing the views and preferences of several different parties, and discourage frivolous or fraudulent candidacies which could jeopardize the fairness and integrity of the election process and the credibility and stability of the political system. Opponents respond that anti-fusion laws burden the associational rights of persons and parties who seek to participate in the political process by influencing the outcome of elections and positions taken by candidates. They submit that fusion allows minor political parties to participate in the electoral process by "co-nominating" candidates with viable chances of winning.

Indiana's election laws include "anti-fusion" statutes. Indiana Code 3–8–7–21 requires any candidate who has been nominated by two parties for the same office to elect, no later than noon on August 1 of the year in which the election is held, which of the nomi-

---

1. "Fusion" is also called "multi-party nomina-   tion" or "cross-filing."

nations the candidate will accept. The election must be in writing, signed, notarized, and filed with the circuit court clerk of the county in which the nomination was made. If the candidate does not make and file an election as required by this law, I.C. 3–8–7–22 states that the circuit court clerk "shall make the election for the person. Preference shall be given to the nomination made by convention." These statutes have not yet been challenged in and interpreted by any court.

The relevant facts in this case are undisputed. In February of 1996, Robbin Stewart filed his declaration of candidacy for a seat on the Center Township board as a Republican. On May 7, 1996, Stewart won the Republican primary. One week earlier at the Libertarian Party convention, however, Stewart also received that party's nomination for the same office, which he accepted. Stewart had not informed or sought the blessing of the Marion County Republican Party to seek or accept the nomination of the Libertarian Party. At the time of the primary neither the voters nor the officers of the Republican Party knew that Stewart had already accepted the Libertarian Party's nomination. Upon learning that he refused to choose the Republican Party's nomination, the Marion County Republican Party chairman withdrew the party's support of Stewart's candidacy "as it no longer believes that Mr. Robbin Stewart represents the party's ideologies and preferences."

Because Stewart failed to elect between his nominations before August 1st at noon, the Marion County clerk made the election for him to be the Libertarian candidate. I.C. 3–8–7–22 provides that a nomination by convention is preferred to one by primary; the Libertarians nominated Stewart at a convention, while the Republicans nominated him by primary. As a result of Stewart's failure to decide and the clerk's election for Stewart,

the Marion County Republican Party was left without a candidate for the Center Township board because the time for filling such a vacancy had elapsed.

After Stewart refused to comply with the Indiana anti-fusion law requiring him to choose one of the parties' nominations by August 1st, he sued the Marion County clerk of circuit court and others[2] alleging that Indiana's ban on fusion abridges his First Amendment rights to political association and Fourteenth Amendment equal protection rights. Stewart sought preliminary and permanent injunctions from printing his name on the official ballot as a candidate for the Libertarian Party but not the Republican Party. He also sought a declaratory judgment that Indiana's anti-fusion statutes are unconstitutional, and money damages for the alleged violations of his free speech and equal protection rights.

The district court considered Stewart's request for a preliminary injunction under the familiar touchstones: has the movant demonstrated (1) some likelihood of success on the merits, and (2) an inadequate remedy at law and irreparable harm if preliminary relief is denied? If so, the court considers (3) the irreparable harm the nonmovant will suffer if preliminary relief is granted, balanced against the irreparable harm to the movant if relief is denied, and (4) the public interest, meaning the effect that granting or denying the injunction will have on nonparties. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1067 (7th Cir.1994).

First, the district court observed that because the Libertarian Party is not a party to this case,[3] the inquiry is whether the Indiana statutes threaten any of Stewart's individual rights. The court concluded they did not. Stewart's equal protection rights were not implicated because no other individual possesses rights denied to Stewart. The court also concluded that Stewart has no constitu-

---

**2.** Among the defendants, Sarah Taylor is the elected clerk of the Marion County, Indiana circuit court. Under the state election code, she is responsible for the conduct of elections within Marion County. The remaining defendants are the representatives of the Democratic and Republican parties on the Marion County Election Board, and David Perkins, who is a precinct election board official responsible for enforcing the state election code.

**3.** For that matter, neither is the Republican Party, which due to the timing of this dispute lost a chance to have a candidate on the ballot because they could not fill Stewart's vacancy.

tional right to represent the views of two divergent organized parties in the same election—and thus has no right to associate himself with both parties—because the two parties do not share a common purpose. The district court relied on *Swamp v. Kennedy*, 950 F.2d 383 (7th Cir.1991), for the proposition that a state statute limiting involuntary fusion of political parties is justified to maintain a stable political system, and that states may regulate elections to ensure that some sort of order accompanies the democratic process. Under this reasoning, the district court concluded that Indiana's anti-fusion statutes do not burden any of Stewart's First or Fourteenth Amendment rights, and that any burden is justified by Indiana's interest in maintaining a stable, confusion-free political system. The district court found that Stewart would not suffer irreparable harm if the injunction did not issue, that considering *Swamp* Stewart's case did not have a reasonable likelihood of success on the merits, and that to grant the injunction would disserve the public interest because it would require Indiana, against its will as expressed in its statutes, to permit involuntary fusion in its elections. Accordingly, the district court denied Stewart's request for a preliminary injunction.[4]

## II.

As a constitutional challenge under civil rights statute 42 U.S.C. § 1983, the district court had federal question jurisdiction over Stewart's suit pursuant to 28 U.S.C. § 1331. This court has jurisdiction over Stewart's appeal of the district court's denial of the preliminary injunction motion as an entitled interlocutory appeal under 28 U.S.C. § 1292(a)(1). The defendants argue that federal jurisdiction no longer exists, as this case is now moot.

### A.

■ The defendants urge this court to decline to exercise jurisdiction in this case, asserting that the requested preliminary injunctive relief is no longer a viable option. When the parties orally argued this case the absentee ballots listing Stewart as a Libertarian but not as a Republican had already been printed and distributed (as they must by Indiana statute). Indiana held the general election on Tuesday, November 5, 1996. Considering these facts, the board asserts that this case is non-justiciable as moot.

■ In general, a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (*per curiam*). The law supports Stewart's position that this case is not moot. Even though this election has already taken place, the controversy in this case satisfies the "capable of repetition yet evading review" exception to the mootness doctrine. *See Norman v. Reed*, 502 U.S. 279, 287–88, 112 S.Ct. 698, 704–05, 116 L.Ed.2d 711 (1992) (ballot eligibility question capable of repetition yet evading review). Normally, a challenge such as Stewart's will meet the exception because elections are routinely too short in duration to be fully litigated, and there is a reasonable expectation that the same party would be subjected to the same action again. "Ballot issues are notorious examples of this [capable of repetition yet evading review] situation." *Arkansas AFL–CIO v. F.C.C.*, 11 F.3d 1430, 1436 (8th Cir. 1993). August 1st to November 5th is a short duration to fully litigate such a case, and as the victor of the Republican primary, Stewart could be politically popular enough to be subject to this statute again. For these reasons, the same parties could generate a similar, future controversy. If Stewart is forced to wait until the next ballot to contest the constitutionality of the Indiana statutes, he will face time constraints similar to those

---

4. In his complaint, Stewart also seeks a declaratory judgment that I.C. 3–9–3–2, Indiana's statutory prohibition of anonymous campaign commercials and publications, unconstitutionally abridges his First Amendment right to free speech and violates Articles 1 and 2 of the Indiana Constitution. Stewart complained that local poll officials removed one of his campaign signs, which contained no identification of its authorization, at the May 7th primary. Stewart moved for summary judgment on this claim after he filed his notice of appeal. This claim is not part of this interlocutory appeal.

that prevented resolution of this case before the 1996 election. *See, e.g., Patriot Party v. Allegheny Cty. Dep't of Elections,* 95 F.3d 253, 257 (3d Cir.1996) (notwithstanding that election was over and candidate had won office, minor political party's challenge to state statutes which prevented cross-nomination not moot because circumstances capable of repetition yet evading review). Moreover, if we find merit in Stewart's claim, we could order a new election. For these reasons, Stewart's suit is not moot.

## B.

■ The procedural posture in which we review this case—an interlocutory appeal of the denial of a preliminary injunction—is important. *See, e.g., Wisconsin Central Ltd. v. Public Serv. Comm'n of Wis.,* 95 F.3d 1359, 1365 (7th Cir.1996) ("Before getting to the merits, we remind all concerned that we are addressing only whether the district court abused its discretion in denying the [ ] motion for an injunction under Fed.R.Civ.P. 65."). We do not engage in a "rigid calculus" in our review of a district court's consideration of a preliminary injunction motion. *Id.* at 1366. Instead, we review the district court's conclusions of law *de novo*, we accept the district court's findings of fact unless clearly erroneous, and we give substantial deference to the district court's " 'discretionary acts of weighing evidence or balancing equitable factors.' " *Id.* (quoting *United States v. Baxter Healthcare Corp.,* 901 F.2d 1401, 1407 (7th Cir.1990)).

■ Our analysis centers on the first preliminary injunction touchstone: likelihood of success on the merits. To assess the constitutionality of state election laws such as these, courts must determine whether the laws burden a candidate's First and Fourteenth Amendments rights. *Eu v. San Francisco Cty. Democratic Central Committee,* 489 U.S. 214, 222, 109 S.Ct. 1013, 1019–20, 103 L.Ed.2d 271 (1989); *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986). If the laws burden protected rights, we gauge the character and magnitude of the burden on the plaintiff and weigh it against the interests that the state proffers to justify

the burden. *Norman,* 502 U.S. at 288–89, 112 S.Ct. at 704–06. If a severe burden, the state's interests must be compelling and the law must be narrowly tailored to serve the state's interests. *Norman,* 502 U.S. at 289, 112 S.Ct. at 705–06; *Eu,* 489 U.S. at 222, 109 S.Ct. at 1019–20; *Swamp v. Kennedy,* 950 F.2d at 385.

■ Stewart's challenge tracks this constitutional analysis. Indiana's anti-fusion statutes prohibit multi-party nominations. Stewart asserts that as a candidate these statutes burden his rights of free speech and association guaranteed by the First and Fourteenth Amendments. He urges us not to follow *Swamp v. Kennedy.* Stewart contends that no compelling state interests outweigh the burdens Indiana's anti-fusion laws place on his wish "to forge an election day alliance to advance a political philosophy," his right to associate with other persons for political activity, and his desire to receive the nomination of a political party whose support he is willing to accept.

This is the second time this court has faced a constitutional challenge to an anti-fusion statute. In *Swamp v. Kennedy,* we assessed whether Wisconsin's statutory ban on multiple-party nominations infringed the associational rights of Wisconsin's Labor–Farm Party, which desired to nominate Douglas LaFollette, a life-long Democrat, for secretary of state. LaFollette had previously filed his nomination papers as a Democrat, and did not seek or desire the Labor–Farm Party's nomination. We determined that the party's associational rights were not absolute, but subject to qualification if elections are to be run fairly and effectively. 950 F.2d at 385–86. The right of party members to associate was only limited to the extent they were prevented from placing the candidate's name on the primary ballot, and that ban alone did not substantially burden the availability of political opportunity. *Id.* at 385. Even if the prohibition on fusion burdened the associational right of the party, we concluded that it could stand because it furthered compelling state interests. *Id.* at 386. In that case, fusion could lead to a situation in which a candidate who appeared on more than one primary election ballot would re-

ceive a majority of the votes cast in all of the primary elections, but still would not appear on the general election ballot because he failed to win a single individual primary. *Id.* Moreover, if fusion were permitted, a single candidate could appear on the general ballot as representing the views and preferences of several different parties, which would make it difficult for voters to distinguish between parties and could cause voter confusion. *Id.*

The district court relied on *Swamp* to conclude that Stewart was not likely to succeed on the merits of his claim. Stewart's counsel conceded at oral argument that to reverse the district court's denial of a preliminary injunction, we would have to overrule *Swamp.* Stewart submits that *stare decisis* should not hold in this case because *Swamp* is a recent case, this issue has not been decided by the Supreme Court, and *stare decisis* is less compelling in constitutional cases. Stewart also cites other authority for reasons either to overrule *Swamp* or to limit its reach short of this case. He points to *Twin Cities Area New Party v. McKenna,* 73 F.3d 196, 200 (8th Cir.), *cert. granted,* —— U.S. ——, 116 S.Ct. 1846, 134 L.Ed.2d 947 , in which the Eighth Circuit found Minnesota's anti-fusion statutes unconstitutional. That court concluded the statutes burdened the New Party's associational rights and that they could be more narrowly tailored by a consent requirement to advance Minnesota's interests. Likewise, in *Patriot Party v. Allegheny Cty. Dep't of Elections,* 95 F.3d 253 (3d Cir.1996), the Third Circuit concluded that Pennsylvania's anti-fusion laws violated the Patriot Party's First and Fourteenth Amendment rights of free association, *id.* at 264, and "facially discriminate between major and minor parties because they preclude a minor party from participating in the cross-nomination of a candidate while allowing major parties to do so." *Id.* at 267.

Even if we did not consider ourselves bound by *stare decisis,* and therefore by *Swamp,* we would not find these circuit decisions compelling. These decisions concerned voluntary, not involuntary, fusion. *Twin Cit-*

*ies* turned on the consensual nature of the nomination between the candidate, the major party, and the minor party. The Minnesota Democratic–Farm–Labor party did not object to the New Party also nominating its candidate for the office of state representative. 73 F.3d at 197. Here, the Marion County Republican Party did not even know of Stewart's plan to obtain the Libertarian party nomination. When it found out, Stewart's conduct so alienated the party that it expressly rejected him as a representative of the GOP.

*Patriot Party* is similarly distinguished. In that case, the Pennsylvania election laws explicitly allowed candidates for certain local offices to be nominated by both major parties. One candidate for the office of school director, Michael Eshenbaugh, sought the nomination of both major parties for a two-year term of school director; he was nominated by the Democrats but not by the Republicans. The Patriot Party also nominated Eshenbaugh for the office of school director, which he accepted. But the director of elections disallowed his nomination because he had already sought the nomination of the major political parties. The Third Circuit in *Patriot Party* "expressly limited" its "discussion and holding to cases involving candidates who willingly accept the third-party cross-nomination." 95 F.3d at 263 n. 4. It recognized that:

[u]nsolicited and unwanted cross-nominations of major party candidates by minor parties present several problems that are not present when the alliance is consensual. For example, a candidate might contrive to have an unpopular minor party endorse his rival in an effort to forge a link in the public mind between the competing candidate and the minor party's unpopular reform.

This kind of manipulation might constitute the type of external threat to political parties with which states are rightfully concerned.

*Id.,* citing *Tashjian,* 479 U.S. at 224, 107 S.Ct. at 553–54.[5] Such concerns informed

---

5. A further distinction exists between this case and *Patriot Party,* in which the portions of the Pennsylvania election code at issue expressly al-

lowed major parties to cross-nominate candidates for school director, but prevented minor political parties from doing so. This accounted

our decision in *Swamp*. 950 F.2d at 385–86. A party has a right to determine which candidate bears its name. To force a political party to accept the nomination of a candidate (or continue to support that candidate) against its will—as Stewart's counsel admitted at oral argument would be the outcome of granting his motion—would require the party to publicly disavow "its" candidate and preclude the party from placing its own candidate on the ballot. This would run contrary to the constitutional freedom of association enjoyed by partisan political organizations. *See Eu*, 489 U.S. at 224, 109 S.Ct. at 1020–21; *Tashjian*, 479 U.S. at 214, 107 S.Ct. at 548; *Democratic Party v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122, 101 S.Ct. 1010, 1019, 67 L.Ed.2d 82 (1981).

▮ None of the reasons Stewart offers convince us to overrule *Swamp*, which is the law in this circuit on involuntary fusion, and which we reaffirm here. The Indiana anti-fusion statutes do not bar Stewart from exercising his right of free speech to campaign freely on issues favored by either party. He can (and did) seek the nomination of two political parties. But for the reasons delineated in *Swamp*, in the general election he can represent only one party, not two. Further, and importantly in this case, *Stewart's* rights, not that of the Libertarian Party, are in dispute. The only diminution of Stewart's associational rights is that he can only appear on one party's ballot in the general election. As the district court correctly pointed out, Stewart has no constitutional right to run in a general election as a candidate for two political parties—one of which objects to his doing so—each of which stands for different policies on numerous issues. Moreover, even if we were to conclude that the Indiana statutes somehow burdened Stewart's free speech and associational rights, Indiana has the same compelling interests as Wisconsin to justify such a burden: maintaining a stable political system, avoiding voter confusion, and maintaining the distinct identities of the parties. *See Swamp*, 950 F.2d at 386. Each party must sacrifice when they are forced to share a candidate; voters are likely to be confused by the same individual placed on more than one party's line on a ballot. *Id.* at 387 (Fairchild, S.J., concurring).

Indiana has not prohibited the free flow of political debate in this case. The best example of this is Stewart himself, who through the primary process cultivated relations with two parties. Requiring Stewart to elect between these parties, while at the same time protecting the rights of political parties as delineated above, is not unconstitutional.

▮ Finally, we reassert that at issue in this appeal is the district court's denial of a preliminary injunction motion. The district court followed the established law of *Swamp* and concluded that Stewart was not likely to succeed on the merits of his claim. Stewart travels a difficult road when he argues that the district court should have found he was likely to succeed on the merits of his case by *not* following circuit precedent. We also agree with the district court's conclusion that the application of the Indiana statutes will not irreparably harm Stewart: the only perceived harm is from not being listed on both ballots, but there could be no competitive disadvantage because no other candidate can appear on more than one ballot either. Further, the grant of the injunction would not serve the public interest in that Indiana has not expressed its interest in the statutes in question to permit involuntary fusion.

### III.

The district court correctly followed Swamp and properly applied the preliminary injunction analysis to deny Stewart's motion for an injunction. We affirm the district court's decision and remand this case for further proceedings, including consideration of Stewart's second claim.

AFFIRMED and REMANDED.

for the Third Circuit's finding of an equal protection violation. 95 F.3d at 268–70. No such

blatant statutory distinction between the rights of major and minor parties exists in this case.