PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-14823

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 10, 2001
THOMAS K. KAHN
CLERK

D. C. Docket No. 97-00358-CV-RWS

FEDERAL ELECTION COMMISSION,

Plaintiff-Appellant,

versus

PUBLIC CITIZEN,
PUBLIC CITIZEN INC.'S FUND FOR A CLEAN CONGRESS,
et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 10, 2001)**

Before EDMONDSON,  BIRCH and BLACK, Circuit Judges.

PER CURIAM:

In this case, we consider a challenge to 2 U.S.C. § 441d(a)'s requirement that a communication expressly advocating the election or defeat of a clearly identified candidate disclose whether the communication was authorized by a candidate or candidate's committee. The Second Circuit, which appears to be the only federal court of appeals to have addressed the constitutionality of § 441d(a), has upheld the candidate authorization disclosure as it applies to solicitations for contributions, but reserved the question of whether the candidate authorization disclosure could be required in communications. *See Fed. Election Comm'n v. Survival Educ. Fund*, 65 F.3d 285 (2d Cir. 1995).[1] Since we conclude that the candidate authorization disclosure is narrowly tailored to serve the overriding governmental interest in assisting voters in evaluating the candidates, we uphold § 441d(a)'s requirement that a communication expressly advocating the election or defeat of a clearly identified candidate disclose whether the communication was authorized by a candidate or candidate's committee.

---

[1]As is evident from the text, § 441d(a) regulates two different types of political activity: (1) "mak[ing] an expenditure for the purpose of . . . expressly advocating the election or defeat of a clearly identified candidate" and (2) "solicit[ing] any contribution." 2 U.S.C. § 441d(a) (1994).

I.

A.    <u>2 U.S.C. § 441d(a)</u>

Section 441d(a)   requires that certain disclosures be included in any communication "expressly advocating the election or defeat of a clearly identified candidate."  2 U.S.C. § 441d(a).[2]   For disclosure purposes, § 441d(a) divides such communications into three categories.   The category into which a particular communication falls, which in turn determines the information that must be disclosed therein, depends upon who paid for the communication and whether the communication was authorized by a candidate.  Thus, a communication paid for and

---

[2]Section 441d(a) of the Federal Election Campaign Act (FECA) provides:

Whenever any person makes an expenditure for the purpose of financing communications expressly advocating the election or defeat of a clearly identified candidate, or solicits any contribution through any broadcasting station, newspaper, magazine, outdoor advertising facility, direct mailing, or any other type of general public political advertising, such communication—
(1) if paid for and authorized by a candidate, an authorized political committee of a candidate, or its agents, shall clearly state that the communication has been paid for by such authorized political committee, or
(2) if paid for by other persons but authorized by a candidate, an authorized political committee of a candidate, or its agents, shall clearly state that the communication is paid for by such other persons and authorized by such authorized political committee;
(3) if not authorized by a candidate, an authorized political committee of a candidate, or its agents, shall clearly state the name of the person who paid for the communication and state that the communication is not authorized by any candidate or candidate's committee.

2 U.S.C. § 441d(a).

authorized by a candidate, an authorized political committee of a candidate, or its agents must clearly state it has been paid for by such authorized political committee. *Id.* § 441d(a)(1). A communication paid for by other persons but authorized by a candidate, an authorized political committee of a candidate, or its agents must clearly state that it has been paid for by such other persons and authorized by such authorized political committee. *Id.* § 441d(a)(2). A communication not authorized by a candidate, an authorized political committee of a candidate, or its agents must clearly state the name of the person who paid for the communication and state that the communication is not authorized by any candidate or candidate's committee. *Id.* § 441d(a)(3).

B.     The Fund's Communications

Public Citizen, Inc. is a non-profit consumer advocacy organization with voluntary membership. Public Citizen has no shareholders and does not accept funds from corporations or unions. In 1991, Public Citizen's board of directors authorized creation of Public Citizen, Inc.'s Fund for a Clean Congress (the Fund), pursuant to 2 U.S.C. §§ 431-455. The Fund was created to raise money from members of Public Citizen for use in a targeted campaign against members of Congress from both political parties who had played major roles in blocking campaign finance reform

initiatives. Craig McDonald was appointed treasurer of the Fund in April 1992. The Fund was active only during the 1992 election campaign.

In early July 1992, within two weeks of the Republican primary in Georgia's sixth congressional district, the Fund announced its "Boot Newt" campaign at a press conference. The Fund spent $48,000 to produce and air a televison advertisement discussing then-Representative Newt Gingrich's record regarding congressional pay raises and perks.[3] The advertisement included a statement that it was paid for by the Fund, but did not state whether it was authorized by any candidate, as required by § 441d(a). The Fund also distributed, at a July 18, 1992, candidate debate, approximately 200 flyers advocating Gingrich's defeat in the Republican primary. Like the television advertisement, these flyers stated that they were paid for by the

---

[3]The television advertisement contained the following:

[Visual: Cash register with the name "Newt Gingrich" rung up.] Newt Gingrich just doesn't practice what he preaches. He said he was against pay raises. [Visual: "$35,000" is rung up on a cash register]. But he voted this raise for himself. He says he's against congressional perks. [Visual: "$67,000" is rung up]. But he stuck us with a chauffeured limousine. [Visual: "$178,000" is rung up.] And spent more on free mail than any Georgia Congressman. [Visual: "$1,400,000" is rung up.] And he took more from special interests than any Georgia Congressman. [Visual: the name "Newt Gingrich" is rung up.] Newt Gingrich is just a sell out. So on July 21st, tell him . . . [Visual: "NO SALE" is rung up]. [Visual: "Paid for by Public Citizen's Fund for a Clean Congress."] [Visual: "July 21. BOOT NEWT."]

Fund, but did not state whether they were authorized by any candidate, as required by § 441d(a).[4]

C.    Procedural Background

An administrative complaint was filed against Public Citizen, the Fund and McDonald (collectively, "Public Citizen"), and after investigation and an attempt at conciliation, the FEC filed a civil enforcement action against Public Citizen. The complaint alleged, *inter alia*, that the Fund and McDonald, as treasurer, had violated 2 U.S.C. § 441d(a) by failing to state whether the "Boot Newt" television advertisement and flyers were authorized by a candidate or candidate committee.[5] The Fund admitted that the flyers and advertisements did not contain the authorization statement.[6] The district court granted summary judgment for Public Citizen on the § 441d(a) claims. *FEC v. Public Citizen, Inc.*, 64 F. Supp. 2d 1327 (N.D. Ga. 1999). The district court held that the disclosure stating that the communications were paid

[4]The Fund also sent solicitation letters. These letters, however, are not at issue in this appeal. Since this case does not involve any solicitation messages, we need not determine whether § 441d(a)'s candidate authorization disclosure could be constitutionally applied to solicitations.

[5]The complaint also alleged other violations of the Federal Election Campaign Act of 1971, as amended, codified at 2 U.S.C. §§ 431-455 (1994). The FEC has appealed the district court's disposition of Counts Three and Four only, which alleged violations of 2 U.S.C. § 441d(a). Our review of the district court's order is therefore limited to only these claims.

[6]Public Citizen does not dispute that the advertisements and flyers fall within the scope of § 441d(a).

for by the Fund, in conjunction with the reporting requirements of FECA, rendered the candidate authorization statement unnecessary to accomplish the stated governmental objectives and therefore unconstitutional. *Id.* at 1337.

## II.

"The constitutionality of a statute is a question of law subject to *de novo* review." *Ranch House, Inc. v. Amerson*, 238 F.3d 1273, 1277 (11th Cir. 2001).

## III.

Discussing candidates' qualifications and advocating their election or defeat is pure political speech that occupies the core of the First Amendment's protection. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346, 115 S. Ct. 1511, 1518-19 (1995). When a law burdens core political speech, we apply "exacting scrutiny" to determine whether the law is narrowly tailored to serve an "overriding" state interest. *Id.* at 347, 115 S. Ct. at 1519. The FEC argues that § 441d(a) withstands this level of scrutiny because § 441d(a) is narrowly tailored to serve the overriding governmental interest in assisting voters in evaluating the candidates by providing the voting public with important information about the relationship between the candidate and the

sponsor of the advertisement, information which, in turn, aids the overall election process.[7]

A.    Overriding Interest

We begin our inquiry into the constitutionality of § 441d(a) by addressing whether the identified governmental interest constitutes an "overriding" interest. The FEC urges us to answer this question in the affirmative, arguing that the disclosure protects the integrity of the electoral process by keeping separate the messages of candidates and independent groups. Public Citizen, on the other hand, argues that the informational interest advanced by the FEC cannot withstand constitutional scrutiny in light of the Supreme Court's decision in *McIntyre*. For the reasons that follow, we conclude that the informational interest advanced by the FEC in support of § 441d(a) constitutes a compelling interest. Nothing in *McIntyre* convinces us otherwise.

First, as the FEC correctly notes, voters evaluate candidates based, in part, on each candidate's position on certain issues. A candidate's position on a particular issue is communicated to the voters through a number of mediums, including a

_____

[7]The FEC argues that § 441d(a) is narrowly tailored to serve two additional compelling governmental interests: (1) deterring corruption and the appearance of corruption, and (2) enforcing FECA's contribution limits. These interests necessarily overlap to a certain degree with the informational interest advanced by the FEC. However, since we conclude that the overriding interest in aiding the voters in evaluating the candidates is sufficient to uphold § 441d(a), we need not reach the question of whether either of the additional two interests, standing alone, would support § 441d(a) against a constitutional challenge.

8

candidate's political advertisements. A political advertisement that has not been authorized by a candidate, however, may not accurately reflect that candidate's view on a particular issue, especially if the communication is drafted to suggest otherwise. Section 441d(a) – and § 441d(a)(3) in particular – addresses this concern by immediately informing the public that such an advertisement was not authorized by a candidate. This, in turn, reduces the likelihood that voters will incorrectly link a candidate's position with the views expressed in that communication.

Second, the candidate authorization disclosure provides voters with important information about the nature of a candidate's relationship with the person or group that paid for the communication. Whereas an authorization by the candidate may be evidence that the relationship between the sponsor and the candidate is closer than if the sponsor is acting without the candidate's authorization, a disclosure that an advertisement was not authorized by a candidate prevents voters from mistakenly concluding that a particular candidate will be especially responsive to the interests advanced in that communication. This is the type of information that "alert[s] the voter to the interests to which a candidate is most likely to be responsive and thus facilitate[s] predictions of future performance in office." *Buckley v. Valeo*, 424 U.S. 1, 67, 96 S. Ct. at 612, 657 (1976).

Third, a number of voters evaluate candidates based upon a candidate's character and integrity. For many voters, how a candidate conducts his or her campaign reflects the candidate's character and integrity. For this reason, the use of so-called "negative advertising" during a campaign may itself become a campaign issue and may influence a voter's choice of candidate. While § 441d(a) does not restrict any person's choice to engage in a negative advertising campaign, § 441d(a) does ensure that voters know when a candidate has or has not authorized such advertisements. In this regard, § 441d(a)(3) prevents the voting public from mistakenly attributing an advertisement that makes a personal attack on a candidate to an opposing candidate who had nothing to do with such tactics.

Relying largely on *McIntyre*, Public Citizen argues that the governmental interest in aiding the public in evaluating the candidates cannot withstand constitutional scrutiny. In *McIntyre*, the state statute under review prohibited the distribution of anonymous campaign literature. 514 U.S. at 336, 115 S. Ct. at 1514. The State of Ohio sought to support the statute against a First Amendment challenge by arguing, in part, that the statute served Ohio's "interest in providing the electorate with relevant information." *Id.* at 348, 115 S. Ct. at 1519. The Court rejected this argument, concluding that this "informational interest is plainly insufficient to support the constitutionality of its disclosure requirement." *Id.* at 349, 115 S. Ct. at 1520.

10

Public Citizen seizes upon this language in support of its contention that the informational interest advanced by the FEC in this case is constitutionally infirm. For a number of reasons, however, we disagree.

First, the Court's rejection of the informational interest advanced in *McInytre* was expressly based on the premise that "the interest in informing the electorate means nothing more than the provision of additional information that may either buttress or undermine the argument in a document." *Id.* at 348, 115 S. Ct. at 1519. In the case *sub judice*, the governmental interest advanced by the FEC is significantly more compelling than that in *McIntyre*. Here, the governmental interest in informing the voting public that a particular communication was not authorized by a candidate does more than merely "buttress or undermine" the argument in a campaign advertisement. Identifying whether a candidate authorized a communication keeps separate the messages of the candidate and an independent group. In this regard, the disclosure protects the integrity of the electoral process by ensuring that the words of an independent group are not mistakenly understood as having come from the mouth of a candidate.

We are not the first to distinguish the informational interest advanced by the State of Ohio in *McIntyre* from the informational interest advanced by the FEC in support of § 441d(a). In *FEC v. Survival Education Fund*, 65 F.3d 285 (2d Cir. 1995),

the Second Circuit upheld the constitutionality of 441d(a) as it applies to solicitations. In doing so, the court emphasized the difference between the general informational interest advanced in *McIntyre* and the narrower informational interest supporting § 441d(a):

> *McIntyre*'s holding that simply informing the electorate is not a sufficiently compelling interest to justify a ban on anonymous campaign literature, was based on the premise that "the interest in informing the electorate means nothing more than the provision of additional information that may either buttress or undermine the argument in a document." In this case, however, the government's interest in identifying who paid for a solicitation letter and whether the candidate authorized the letter goes significantly further: by avoiding any misunderstanding as to the actual recipient of the solicited contribution, § 441d(a)(3) enables the solicitee to contribute money to those groups which truly reflect his or her beliefs. This is the sort of critical information that protects the integrity of the electoral process.

*Id.* at 297 (internal citations omitted).

Second, Public Citizen's argument that an informational interest alone cannot support the candidate authorization disclosure requirement cannot be easily reconciled with the Supreme Court's holding in *Buckley*. In *Buckley*, the Court upheld provisions of FECA that require private individuals to report to the FEC independent expenditures made for communications advocating the election or defeat of a candidate for federal office. 424 U.S. at 80, 96 S. Ct. at 664. Among the rationales offered in support of the disclosures in *Buckley* was the governmental interest in "provid[ing] the electorate with information as to where the political campaign money

12

comes from and how it is spent by the candidate *in order to aid the voters in evaluating those who seek federal office.*" *Id.* at 66-67, 96 S. Ct. at 657 (internal quotation marks and footnote omitted) (emphasis added). Here, the interest advanced by the FEC is substantially similar to that advanced in *Buckley*, and, we conclude, equally compelling.[8]

B.      Narrowly Tailored

We turn next to the question of whether § 441d(a) is narrowly tailored to serve the stated governmental interest. We begin by noting that unlike the statute in *McIntyre*, § 441d(a) is narrowly drafted to apply to only certain types of political communications. In particular, § 441d(a) applies only to candidate elections, and has no bearing on issue referenda. Moreover, § 441d(a) does not purport to reach all communications affecting a candidate election. Rather, the statute's reach is limited to those communications which expressly advocate the election or defeat of a clearly

---

[8]Public Citizen contends that its argument is bolstered by the fact that *Buckley* upheld campaign contribution limits while striking down expenditure limits. We disagree. While Public Citizen may be correct in arguing that the government's interest in regulating independent advocacy is less compelling than its interest in regulating activity involving candidate's campaigns, *see Buckley,* 424 U.S. at 46, 96 S. Ct. at 647 ("independent advocacy . . . does not presently appear to pose dangers of real or apparent corruption comparable to those identified with large campaign contributions"), this argument is misplaced in the context of the present case. The candidate authorization disclosure at issue in this case is designed to inform the public whether, in fact, the communication is independent advocacy or an authorized communication. That one type of advocacy – coordinated expenditures – might present a greater potential for corruption only furthers the need for a contemporaneous disclosure of whether the communication was authorized by a candidate or instead was an independent expenditure.

13

identified candidate. These communications, by their very nature, present the greatest likelihood for voter confusion. At least two courts, in construing similar state statutes, have recognized this distinction and limited an otherwise overly broad disclosure requirement to communications which expressly advocate the election or defeat of a clearly identified candidate. *See Vt. Right to Life Comm., Inc. v. Sorrell*, 19 F. Supp. 2d 204 (D. Vt. 1998); *West Virginians for Life, Inc. v. Smith*, 960 F. Supp. 1036 (S.D. W.Va. 1996).

Public Citizen acknowledges that § 441d(a) is limited in scope, but argues that a more narrowly tailored disclosure requirement would serve the set of interests advanced by the FEC. Public Citizen first argues that the Fund's compliance with § 441d(a)'s identification disclosure requirement is sufficient to further the FEC's interest. According to Public Citizen, requiring a candidate authorization disclosure in addition to an identification disclosure unduly burdens its First Amendment rights.[9]

---

[9]In support of this argument, Public Citizen relies heavily on *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637 (6th Cir. 1997). There, the Sixth Circuit upheld against a facial constitutional challenge a state law requirement that paid political advertisements identify their sponsors. *Id.* at 648. The court held that the requirement was constitutional on its face because it was narrowly tailored toward achieving the goals of preventing corruption and enforcing campaign limits. *Id.* Although the court did not discuss a candidate authorization disclosure like the one at issue in this case, Public Citizen argues that the implication of *Terry* is that any disclosure requirement above and beyond the one upheld in that case would violate the First Amendment. We decline to give such an expansive reading to *Terry*. The Sixth Circuit ruled only on an identification requirement. The court did not have before it a candidate authorization disclosure. Accordingly, it is not surprising that the court offered no opinion as to whether such a requirement could withstand constitutional scrutiny.

We disagree. In this case, a statement that the Fund paid for the "Boot Newt" advertisement does not reveal whether the Fund acted on its own or with the advance approval of a candidate. Disclosure of the sponsor's name, alone, therefore does not eliminate the possibility that the voting public will mistakenly construe an independent communication as having been authorized by a candidate. Moreover, the need for the additional candidate authorization requirement is especially important since an independent group that is informally associated with a candidate could take advantage of this association by implying that their communications have been authorized by the candidate, when, in fact, there was no authorization.

Public Citizen next argues that the FEC's interest is fully served by requiring an authorization disclosure only where the communication was, in fact, authorized by a candidate. According to Public Citizen, the informational interest advanced by the FEC may be a legitimate argument to support the authorization statement requirement as it relates to candidate or coordinated expenditures, but this interest cannot apply to independent expenditures. In other words, Public Citizen argues that while the FEC may be able to require a statement *acknowledging* that a communication was authorized by a candidate, the FEC may not require a statement *disclaiming* such authorization. Public Citizen's argument, however, misses the mark. Absent an authorization statement, it is unclear whether the message contained in a political

15

communication is independent, and therefore the communication cannot properly be evaluated by the voting public. Since a communication's complete silence on whether it was approved by a candidate does not clearly convey to all voters who see it the affirmative information that it was not authorized by any candidate, the communication must clearly state whether it was or was not authorized by a candidate.[10] We thus have not been presented with — nor can we conceive of — a more narrowly tailored means to serve the compelling governmental interest advanced here than the candidate authorization statement.

IV.

The issue presented in this case requires us to balance two competing interests: the governmental interest in protecting the overall integrity of the election process and the right of Public Citizen to engage in protected political speech. We conclude that § 441d(a) strikes an appropriate balance between these two interests. We hold therefore that requiring Public Citizen to include in its television advertisements and flyers, which were funded by an independent expenditure, a statement that the

_____

[10]Public Citizen also argues that applying § 441d(a)(3) to an independent issue advocacy organization such as itself will create the impression that it may coordinate with candidates elsewhere, and therefore diminish the impact of its advocacy. Nothing in § 441d(a)(3), however requires the sponsor of the communication to reference a particular candidate. The sponsor may comply with § 441d(a)(3) by stating that the communication was not authorized by *any* candidate. The sponsor is free, of course, to include an additional statement disassociating itself from all candidates should it deem this necessary.

advertisement was not authorized by a political candidate does not impermissibly infringe on Public Citizen's First Amendment rights to free speech.

The district court's entry of summary judgment on the FEC's claims under § 441d(a) is vacated. We remand to the district court to enter summary judgment for the FEC on its claims under § 441d(a) and for a determination of the appropriate relief for the FEC on its § 441d(a) claims.

VACATED AND REMANDED.

BIRCH, Circuit Judge, dissenting:

I respectfully dissent. The majority's decision rests on the finding that the FEC's interest in informing the public satisfies the overriding interest requirement of exacting scrutiny. I cannot agree.

The majority addresses the whole of 2 U.S.C. § 441d(a), concluding that candidate authorization disclosure is required in three situations: (1) where the candidate pays for and authorizes the communication, (2) where a candidate authorizes a communication, but "other persons" pay for the communication, and (3) where an independent party pays for the communication without authorization from the candidate. Since Public Citizen functioned as an independent party, I address only § 441d(a)(3). I find that where an independent party communicates a political message, the interest in informing the public of candidate authorization does not constitute an overriding interest sufficient to justify infringement of First Amendment rights. Since the FEC has not met its burden, I would hold § 441d(a)(3) unconstitutional.

The FEC argues that § 441d(a) provides the public with important information about the relationship between candidates and their financial support by individuals or organizations. The FEC cites Buckley v. Valeo for the proposition that an authorization statement provides information to voters that aids them in evaluating a

18

candidate's associations and possible influences. These arguments collapse, however, because the agency fails to distinguish between the regulation of coordinated political activity and the regulation of independent political advocacy.

The Supreme Court has expressly found that the rationale of providing the public with information does not apply to independent expenditures.

> [In Buckley,] we stressed the importance of providing "the electorate
> with information 'as to where political campaign money comes from and
> how it is spent by the candidate.'" We observed that the "sources of a
> candidate's financial support also alert the voter to the interests to which
> a candidate is most likely to be responsive and thus facilitate predictions
> of future performance in office." Those comments concerned
> contributions to the candidate or expenditures authorized by the
> candidate or his responsible agent. They had no reference to the kind of
> independent activity pursued by Mrs. McIntyre.

McIntyre v. Ohio Elections Com'n, 514 U.S. 334, 354, 115 S. Ct. 1511, 1523 (1995) (quoting Buckley, 424 U.S. 1, 66, 67, 96 S. Ct. 612, 657) (internal citations omitted). Like Mrs. McIntyre, Public Citizen's political activity was independent.

Since the rationale of providing the public with information does not apply to independent expenditures, § 441d(a)(3)'s intrusion into the speaker's First Amendment rights is unjustified. "The simple interest in providing voters with additional relevant information does not justify a state requirement that [an author] make statements or disclosures she would otherwise omit." Id. at 348, 115 S. Ct. at 1520. The McIntyre Court found that the speaker's name was "additional relevant information." Surely whether an independent speaker has coordinated with a campaign can be nothing more.

The majority sidesteps this argument by claiming a distinction between the governmental interest at stake in McIntyre with the governmental interest at stake here. The majority finds that the disclosure requirement of § 441d(a)(3) separates the message of a candidate from the message of an independent speaker. In response, I urge the following:

> Don't underestimate the common man. People are intelligent enough to evaluate the source of an anonymous writing . . . They can evaluate its anonymity along with its message, as long as they are permitted, as they must be, to read that message. And then, once they have done so, it is for them to decide what is 'responsible', what is valuable, and what is truth.

People v. Duryea, 351 N.Y.S.2d 978, 996 (1974). Voters are already provided with information regarding the funding for each communication; they should be able to construe the absence of an authorization as they see fit.

The interest in informing the public is insufficient to justify an authorization statement requirement for independent expenditures. In the absence of an overriding interest, I would hold that the authorization disclosure requirement of § 441d(a)(3) impermissibly infringes on Public Citizen's right to free speech as guaranteed by the First Amendment.