In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2204

BRIAN MAJORS, *et al.*,

*Plaintiffs-Appellants,*

v.

MARSHA ABELL, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 98-1479-C-M/S—**Larry J. McKinney**, *Chief Judge.*

ARGUED NOVEMBER 1, 2002—DECIDED JANUARY 23, 2003

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges.*

POSNER, *Circuit Judge.* An Indiana statute, challenged in this suit as an infringement of free speech, requires that political advertising that "expressly advocat[es] the election or defeat of a clearly identified candidate" include "adequate notice of the identity of persons who paid for . . . the communication," Ind. Code §§ 3-9-3-2.5(b)(1), (d), and makes violation a misdemeanor. The district court dismissed the suit for lack of federal subject-matter jurisdiction on the ground that the noncandidate plaintiffs lacked standing and that as to the candidate plaintiffs the suit was moot.

The noncandidate plaintiffs are individuals who would like to take out ads expressly advocating the election or defeat of particular candidates but are afraid to do so lest they be prosecuted. The district judge held that they had no standing to challenge the statute because they had not been threatened with prosecution (unlike Majors, one of the candidate plaintiffs) and "apparently" were not even subject to the statute, which the defendants had argued is limited to candidates, campaign committees, and the committee's agents, despite the statute's use of the broad term "persons."

The judge's ruling on standing was incorrect. A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him, *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988); *Sequoia Books, Inc. v. Ingemunson*, 901 F.2d 630, 633-34 (7th Cir. 1990); *American Booksellers Ass'n, Inc. v. Hudnut*, 771 F.2d 323, 327 (7th Cir. 1985), aff'd without opinion, 475 U.S. 1001 (1986); the threat is latent in the existence of the statute. Not if it clearly fails to cover his conduct, of course. But if it arguably covers it, and so may deter constitutionally protected expression because most people are frightened of violating criminal statutes especially when the gains are slight, as they would be for people seeking only to make a political point and not themselves political operatives, there is standing. See *Virginia v. American Booksellers Ass'n, Inc., supra*, 484 U.S. at 392-93; *Hoover v. Wagner*, 47 F.3d 845, 847 (7th Cir. 1995).

On its face, the Indiana statute applies to all persons who pay for political advertising that expressly advocates the election or defeat of a particular candidate. The defendants (various state and local election officials) argue to us as they did to the district judge that a proper inter-

pretation of "persons" limits the term to candidates, their committees, and the committees' agents. But no Indiana court has so interpreted the statute—nor did the district judge, who said only that "apparently" it was so limited. The website of the Indiana Election Commission, http://www.in.gov/sos/pdfs/Disclaim.pdf (May 2002), does not contain the limiting interpretation, but on the contrary says that the statute applies to "*individuals*, organizations, or committees who purchase advertisement time or space or circulate or publish material in support of or in opposition to a candidate, a political party, or a public question" and indeed to "*all* individuals and political organizations" who do any of these things (emphasis added).

The district judge did not doubt that the candidate plaintiffs, at least, had standing. The principal one, Majors, had violated the statute and been threatened with prosecution, though not actually prosecuted. Majors' standing might be questioned on the ground that a candidate has no interest in anonymity that the statute might protect; for there are no anonymous candidates. But a candidate can be harmed if his supporters are deterred by loss of *their* anonymity from supporting him by paid advertisements. Although it is their interest in anonymity that is impaired (the candidate has none, as we have said), a plaintiff who is harmed by the infringement of another person's right of free speech has standing to challenge that infringement. E.g., *Virginia v. American Booksellers Ass'n, Inc.*, *supra*, 484 U.S at 392-93; *Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 954-58 (1984); *Shimer v. Washington*, 100 F.3d 506, 508-09 (7th Cir. 1996). As these cases explain, the harm establishes Article III standing; and the easy deterrability (already noted) of much political speech is a ground for relaxing the doctrine of "prudential" standing, which ordinarily precludes a suit by one person to redress

an infringement of the rights of another even if the infringement injures the first person as well.

But the judge thought that both Majors' case and that of his fellow candidate plaintiffs (whom we need not discuss separately) had become moot because of his lackadaisical pursuit both of the litigation and of his political career. Majors was a candidate for county assessor on the Libertarian Party ticket in 1998 when, on October 28, a week before the election, he and the other plaintiffs filed this suit and asked for a preliminary injunction. The election came and went without the injunction being granted. Majors was defeated, and the case went into hibernation. Not until February of 2000 did the plaintiffs make any further motion in the case. Nor did Majors run for public office in 2000.

Majors' inaction, the judge ruled, took the case outside the rule that when a case is capable of repetition but avoids review because it cannot be decided in time to avert mootness, its mootness does not deprive the court of jurisdiction. *Weinstein v. Bradford*, 423 U.S. 147, 148-49 (1975) (per curiam); *In re Associated Press*, 162 F.3d 503, 511-12 (7th Cir. 1998). The standard example is abortion. A suit by a pregnant woman challenging a state law limiting the right to an abortion is unlikely to be decided before the pregnancy ends one way or another, and so the termination of the pregnancy is held not to terminate jurisdiction. *Roe v. Wade*, 410 U.S. 113, 125 (1973). Challenges to election rules are treated the same way. *Norman v. Reed*, 502 U.S. 279, 287-88 (1992); *Meyer v. Grant*, 486 U.S. 414, 417 n. 2 (1988); *Stewart v. Taylor*, 104 F.3d 965, 969-70 (7th Cir. 1997). For all we know, it wasn't until shortly before the November 1998 election that Majors was threatened with prosecution, and by then it was too late for him and the other plaintiffs to have any hope of invalidating the law before the election

took place and rendered the suit moot by conventional standards.

The district judge thus was right not to dismiss the case the day after the election for lack of jurisdiction. But he was wrong to dismiss it later merely because Majors hadn't pressed the litigation harder or run in the next election. A candidate plaintiff no more has a duty to run in every election in order to keep his suit alive than an abortion plaintiff has a duty to become pregnant again at the earliest possible opportunity in order to keep her suit alive. Politicians who are defeated in an election will often wait years before running again; obviously this doesn't show they're not serious about their political career. And once Majors decided that he would not run for county assessor or some other office in 2000 (we're not even told whether the assessor's term is two years or four years), there was no reason for him to try to accelerate the lawsuit so that it could be decided before the 2000 election.

Furthermore, while canonical statements of the exception to mootness for cases capable of repetition but evading review require that the dispute giving rise to the case be capable of repetition *by the same plaintiff*, e.g., *Weinstein v. Bradford, supra*, 423 U.S. at 149; *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curium); *LaRouche v. Fowler*, 152 F.3d 974, 978 (D.C. Cir. 1998), the courts, perhaps to avoid complicating lawsuits with incessant interruptions to assure the continued existence of a live controversy, do not interpret the requirement literally, at least in abortion and election cases, *Honig v. Doe*, 484 U.S. 305, 335-36 (1988) (dissenting opinion); see *Dunn v. Blumstein*, 405 U.S. 330, 333 n. 2 (1972); cf. *Krislov v. Rednour*, 226 F.3d 851, 858 (7th Cir. 2000); but cf. *Van Wie v. Pataki*, 267 F.3d 109, 114-15 (2d Cir. 2001)—and possibly more generally, *Honig v. Doe, supra*, 484 U.S. at 318-20 and n. 6 (majority opinion), though

we needn't worry about that. If a suit attacking an abortion statute has dragged on for several years after the plaintiff's pregnancy terminated, the court does not conduct a hearing on whether she may have fertility problems or may have decided that she doesn't want to become pregnant again. And similarly in an election case the court will not keep interrogating the plaintiff to assess the likely trajectory of his political career.

So the suit should not have been dismissed on jurisdictional grounds, and we turn to the merits. Although the parties prudently have briefed the merits, we think it would be premature for us to decide them. For they may depend on the meaning of the challenged statute, which only the Indiana courts can determine authoritatively. If the statute is as narrow as the defendants claim it is, it is a straightforward antifraud statute unlikely to present serious constitutional problems. For on their interpretation it merely forbids the candidate and his organization to create the impression that independent voices support him or oppose his opponent, when in fact the voices are those of the candidate himself, playing ventriloquist. Cf. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 351 (1995) ("it [the statute challenged in that case] applies not only to the activities of candidates and their organized supporters, but also to individuals acting independently and using only their own modest resources"); *id.* at 354. But if instead as the plaintiffs argue the statute reaches all persons, then it is a blanket prohibition of anonymous campaign-related speech (unless the speech is costless, for it is only the identity of the payor of political advertising that is required to be disclosed), and thus puts a crimp in political speech by exposing persons who want to express themselves for or against a particular candidate to the risk of retaliation. The *McIntyre* decision holds that government cannot forbid the distribu-

tion of anonymous campaign literature. *Id.* at 357; see also *Talley v. California*, 362 U.S. 60, 64-65 (1960).

Several courts have nevertheless upheld statutes materially identical to the Indiana statute broadly interpreted to reach "all persons." They have offered two grounds. The first is that the statute struck down in *McIntyre* applied to issue referenda as well as to candidate elections and the decision was limited to the statute's application to referenda, a distinction with support in the way *McIntyre* distinguished *Buckley v. Valeo*, 424 U.S. 1, 80 (1976) (per curiam). See 514 U.S. at 356. Second, in *McIntyre* the state had defended its statute only on the basis that knowing the author of a document helps one to evaluate its truthfulness, whereas these courts think it a weightier ground that disclosure "protects the integrity of the electoral process by ensuring that the words of an independent group are not mistakenly understood as having come from the mouth of a candidate." *Federal Election Comm'n v. Public Citizen*, 268 F.3d 1283, 1288 (11th Cir. 2001) (per curiam); see also *Gable v. Patton*, 142 F.3d 940, 944-45 (6th Cir. 1998); *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 646-48 (6th Cir. 1997); *Seymour v. Elections Enforcement Comm'n*, 762 A.2d 880, 886-87 (Conn. 2000).

These might be thought fragile distinctions. Interest groups contest referenda just as candidates and parties contest elections of officials, and so the public interest in knowing the source of an anonymous contribution to the debate is as great in the one case as in the other, but was not great enough to sway the Court in *McIntyre*. For we read there that "insofar as the interest in informing the electorate means nothing more than the provision of additional information that may either buttress or undermine the argument in a document, we think the identity of the speaker is no different from other compo-

nents of the document's content that the author is free to include or exclude." 514 U.S. at 348. As for the interest in forbidding the author of campaign literature to "pass off" his words as those of the candidate, it does not require revealing the author's name. Recall that *McIntyre* distinguishes *Buckley v. Valeo, supra,* 424 U.S. at 60-84, which upheld the compelled disclosure of the identity of financial contributors to federal election campaigns. 514 U.S. at 353-56.

The fact that the state in our case is advocating the narrow reading of its statute indicates its awareness that if broadly interpreted, in accordance with decisions such as *Public Citizen,* the statute may be unconstitutional. The statutory language supports the broad interpretation, but literal interpretations are often rejected when necessary to save a statute from being held unconstitutional. *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 134 (1974); *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 527 (1989) (Scalia, J., concurring); *Saadeh v. Farouki,* 107 F.3d 52, 58-60 (D.C. Cir. 1997); *Hall v. Walter,* 969 P.2d 224, 229-31 (Colo. 1998); *Sassone v. Lepore,* 629 A.2d 357, 363-64 (Conn. 1993) ("if literal construction of a statute raises serious constitutional questions, we are obligated to search for a construction that will accomplish the legislature's purpose without risking the statute's invalidity"); cf. *Buckley v. Valeo, supra,* 424 U.S. at 76-81. Indiana's highest court has embraced this principle, as explained in *A Woman's Choice-East Side Women's Clinic v. Newman,* 671 N.E.2d 104, 111 (Ind. 1996) (concurring opinion). Indeed, after we certified an issue of Indiana election law quite like the one in this case to the Indiana Supreme Court in *Brownsburg Area Patrons Affecting Change v. Baldwin,* 137 F.3d 503, 509-10 (7th Cir. 1998), that court adopted a narrowing interpretation to preserve the law's constitutionality. 714 N.E.2d 135, 142 (Ind. 1999). A state court is bound to have a better idea

of the elasticity of the state's statutes than a federal court would have. Cf. *Wisconsin Right to Life, Inc. v. Paradise*, 138 F.3d 1183, 1186-87 (7th Cir. 1998).

We therefore certify to the Indiana Supreme Court, pursuant to 7th Cir. R. 52 and Ind. Code § 33-2-4-1, the following question, upon the answer to which the further proceedings in this appeal will depend:

> Is the term "persons" in Ind. Code §§ 3-9-3-2.5(b)(1), (d) limited to candidates, authorized political committees or subcommittees of candidates, and the agents of such committees or subcommittees, or does it have a broader scope, and, if so, how much broader?

One loose end remains to be tied up. In addition to seeking injunctive relief, the plaintiffs seek damages. As the unconstitutionality of the statute is debatable, the defendants are shielded by official immunity from damages liability. The dismissal of so much of the suit as seeks damages is therefore affirmed.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*